## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP TIENE, | : CIVIL ACTION |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 17-2683 |
| | : |
| LAW OFFICE OF J. SCOTT WATSON P.C. | : |
| and DREXEL UNIVERSITY, | : |
| | : |
| Defendants. | : |
| | : |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                    **JANUARY  3, 2018**

Plaintiff Philip Tiene ("Tiene") filed suit in this Court against Defendant Law Office of J. Scott Watson P.C. ("JSW") and Defendant Drexel University (collectively, "Defendants"), alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") against JSW, and a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.* ("UTPCPL") against Drexel. Drexel filed suit in Philadelphia Municipal Court against Tiene for failure to pay tuition and obtained a judgment of $10,596.35 on June 14, 2017.  Tiene's claims arise out of allegedly deceptive practices the Defendants took in seeking to collect debt from his failure to pay the tuition.

Presently before the Court are Tiene's Motion for Leave to File an Amended Complaint and Defendants' Motion for Summary Judgment, along with numerous briefs in support and opposition to the respective Motions.  Defendants' Motion for Summary seeks dismissal of this action based on the *Rooker-Feldman* doctrine and res judicata.  For the reasons discussed below,

Tiene's Motion for Leave to File an Amended Complaint is denied, and Defendants' Motion for Summary Judgment is granted.

## I.  <u>BACKGROUND</u>[1]

Tiene was enrolled as a student at Drexel from September 22, 2008 to June 14, 2014. (Defs.' Mem. Support Mot. Summ. J. at 3.)  Drexel students use the "Banner System" to access and self-service their student accounts.  (*Id.*)  On July 9, 2012, Tiene first entered his residential address in the Banner System as 7 Woodcrest Road, Boonton, New Jersey 07005 (the "Boonton Address").  (*Id.* at 4.)  In August 2012, September 2012, March 2013, September 2013, and March 2014, Tiene confirmed in the Banner System that his residential address was the Boonton Address.  (*Id.*)  Drexel students are responsible for maintaining and updating their contact information in the Banner System.  (*Id.* at 3.)  When Drexel seeks collection of a delinquent tuition account, its policy is to use the student's residential address entered in the Banner System. (*Id.* at 4.)  Further, Drexel students must read and complete the "Student Financial Obligation and Tuition Repayment Agreement" before they are able to register for classes, which provides, among other things, that they will be held responsible for "collection costs and attorney's fees" that "will be assessed at a minimum of 33 and 1/3 percent of [the] balance due."  (*Id.* at 5.)

Tiene attended two classes at Drexel between September 2013 and March 2014, but he failed to pay the tuition and other fees associated with them.  (*Id.* at 6.)  His balance for the two classes, which was composed of tuition, late fees, and other administrative fees, was $7,881.73. (*Id.*)

---

[1] Defendants' Memorandum of Law in Support of their Motion for Summary Judgment includes a "Statement of Undisputed Facts."  Tiene chose simply to respond to Defendants' facts in his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  We will utilize Defendants' factual outline to the extent that Tiene agrees with the averments or there is no counter evidence to rebut them.

In April 2015, Drexel retained a collection agency called "ConServe" regarding Tiene's unpaid tuition. (*Id.* at 7.) On May 21, 2015, after being contacted by ConServe, Tiene spoke on the telephone to Jerome Wilson ("Wilson"), who was a Senior Collection Specialist in Drexel's Bursar's Office, about his tuition bill. (*Id.*) Drexel does not record any telephone conversations with its students, but Wilson entered notes from the call in Drexel's "RightNow System." (*Id.*) During the call, Tiene said he would meet with someone from Drexel the following week to discuss his bill. (*Id.* at 8.) Wilson informed Tiene that his account with ConServe would be placed on hold. Tiene also provided a Philadelphia address to Wilson, which was recorded in the Banner System as Tiene's billing address. (*Id.*) That same day, Wilson contacted ConServe to place a hold on collection activity for Tiene's account until Tiene could review the tuition bill. (*Id.*) However, Tiene failed to contact or visit Drexel's Bursar's Office to discuss his bill, and on July 20, 2015, Drexel directed ConServe to resume collection activity. (*Id.*)

In May 2016, Drexel provided JSW with a "placement sheet" that contained information for several accounts, including Tiene's. (*Id.* at 9.) The placement sheet that Drexel provided showed Tiene's address as the Boonton Address. (*Id.*) JSW typically sends collection letters to the address of the individual that the creditor (Drexel) provides. (*Id.*) JSW sent collection letters to Tiene at the Boonton Address on May 12, 2016 and June 24, 2016, neither of which were returned as undeliverable. (*Id.* at 9-10.)

On January 25, 2017, JSW filed a Complaint ("Municipal Court Complaint") in Philadelphia Municipal Court ("Municipal Court Lawsuit") against Tiene, seeking the outstanding tuition balance, attorney's fees, and court costs.[2] (*Id.* at 10.) Drexel sought a total amount of $10,596.35, composed of $7,881.73 in principal, $2,624.62 in attorney's fees, and $90.00 in court costs. (*Id.* at 11.) JSW served the Municipal Court Complaint via regular mail

---

[2] The Municipal Court action was captioned as *Drexel University v. Tiene*, SC-17-01-25-5579.

and certified mail, return receipt requested, at the Boonton Address. (*Id.*) The copy of the Municipal Court Complaint that was sent via certified mail, return receipt requested, was returned to JSW as unclaimed. (*Id.*) The Municipal Court Complaint sent via regular mail was never returned to JSW. (*Id.*)

On March 29, 2017, an attorney from JSW attended a hearing in the Municipal Court Lawsuit, but Tiene did not attend. (*Id.*) Consequently, the Municipal Court Judge entered a default judgment in Drexel's favor for $10,596.35, which represented the full amount Drexel sought. (*Id.*) JSW sent a letter dated March 31, 2017 to the Boonton Address apprising Tiene of the default judgment. (*Id.*)

On April 7, 2017, Tiene, through counsel, filed a Petition to Open the Default Judgment with the Municipal Court. (*Id.* at 12.) In his Petition, Tiene claimed that Drexel "knowingly served process at the wrong, out of state address, where [Tiene] does not reside, in order to avoid [the] personal service requirement in Philadelphia County and obtain [judgment] by default." (*Id.*, Ex. 19.) On May 11, 2017, Drexel and Tiene appeared for a hearing in Municipal Court regarding Tiene's Petition to Open the Default Judgment. (*Id.* at 12.) The Municipal Court Judge found that Drexel did not engage in any intentional wrongdoing in serving Tiene at the Boonton Address, but ultimately granted Tiene's Petition, vacated the default judgment, and allowed Tiene to proceed on the merits. (*Id.* at 13.) Tiene's counsel was not prepared to have a merits hearing that day and requested a continuance, which was granted. (*Id.*)

Tiene and Drexel (represented by JSW) appeared for trial in Philadelphia Municipal Court on June 14, 2017. (*Id.*) The Municipal Court Judge entered judgment for Drexel in the amount of $10,596.35, again composed of $7,881.73 in principal, $2,624.62 in attorney's fees, and $90.00 in court costs. (*Id.* at 14.) Tiene attempted to appeal the judgment to the Court of

Common Pleas of Philadelphia County, but he failed to follow the procedural requirements, resulting in his appeal being stricken.[3]

On the same day that judgment was rendered against Tiene and in favor of Drexel in Municipal Court, Tiene filed the instant lawsuit in this Court, naming JSW and Drexel as Defendants. (*Id.*) The Complaint ("Complaint" or "Federal Complaint") contains two Counts: Count I[4] is against JSW and alleges a violation of the FDCPA, and Count II is against Drexel and alleges a violation of the Pennsylvania UTPCPL. (*See generally* Compl.) Boiled down to its essence, Tiene claims that the Defendants used false representations and deceptive means to collect Tiene's debt by improperly serving him with process to obtain a quick default judgment, sending him letters with false and misleading information, and misrepresenting to the Municipal Court that attorney's fees and collections costs were recoverable. (*Id.* ¶¶ 2-7.)

On October 31, 2017, Defendants filed a Motion for Summary Judgment that seeks dismissal of all claims based on the *Rooker-Feldman* doctrine and res judicata. Just two days later, Tiene filed a Motion for Leave to File an Amended Complaint. The parties have filed numerous briefs in support and opposition to the respective Motions. For the reasons noted

---

[3] Pursuant to Phila. Mun. Local R. 124, "[a] party aggrieved by a judgment for money . . . may appeal therefrom within 30 days after the date of the entry of the judgment by filing with the prothonotary of the Court of Common Pleas a notice of appeal with a copy of the Municipal Court disposition sheet." Phila. Mun. Local R. 124; *see also* Phila. Local R. 1001(a)(1). Tiene timely appealed the judgment entered in favor of Drexel, but failed to serve the "Rule to File a Complaint" upon Drexel in accordance with Phila. Local R. 1001(h). (Defs.' Mem. Support Mot. Summ. J. at 14.) On August 4, 2017, Drexel filed a Praecipe to Strike the Appeal due to Tiene's failure to comply with Phila. Local R. 1001(h). (*Id.*) Tiene filed a Motion to Reinstate the Appeal on August 14, 2017, which was denied on October 3, 2017. (*Id.*) On October 18, 2017, Tiene filed a Motion for Reconsideration of the Order denying his Motion to Reinstate the Appeal, which was denied with prejudice on October 25, 2017. (*Id.* at 14-15.)

[4] Tiene does not label the FDCPA claim against JSW as Count I, but he labels the UTPCPL claim against Drexel as Count II. For simplicity, we will refer to the FDCPA claim against JSW as Count I.

below, Tiene's Motion for Leave to File an Amended Complaint is denied, and Defendants' Motion for Summary Judgment is granted.[5]

## II.   <u>LEGAL STANDARD</u>

### A.   Rule 15(a) Standard

Federal Rule of Civil Procedure 15(a) provides that when a party cannot amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and directs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "A finding of 'dilatory motive' is justified where the plaintiff acts 'in an effort to prolong litigation.'" *Breyer v. Meissner*, 23 F. Supp. 2d 540, 542 (E.D. Pa. 1998) (quoting *Burlington*, 114 F.3d at 1434).

### B.   Rule 56(a) Standard

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and

---

[5] Tiene has also filed a Motion to Compel Defendants' Depositions and a Motion to Strike Objections and Produce Documents ("Discovery Motions"). Because the Defendants are entitled to summary judgment, we will deny his Discovery Motions as moot.

identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

III. **DISCUSSION**

A. **Tiene's Motion for Leave to File an Amended Complaint**

We first begin with Tiene's Motion for Leave to File an Amended Complaint, which we may dispose of fairly quickly. As discussed above, District Courts are justified in denying leave to amend when grounds such as undue delay, bad faith, a dilatory motive, prejudice, and futility are present. *Burlington*, 114 F.3d at 1434.

We find that Tiene moving for leave to amend at this stage of the litigation amounts to a dilatory motive. "A finding of 'dilatory motive' is justified where the plaintiff acts 'in an effort to prolong litigation.'" *Breyer*, 23 F. Supp. 2d at 542 (quoting *Burlington*, 114 F.3d at 1434). Defendants filed their Motion for Summary Judgment on October 31, 2017, and just two days later, Tiene filed his Motion for Leave to File an Amended Complaint. Significantly, Tiene admits that his proposed "First Amended Complaint" does not "add or subtract any parties to the suit[] [and] does not add or subtract any of the causes of action from the Original Complaint." (Pl.'s Mot. Leave to File Amended Compl. ¶ 15.) Tiene's attempt to file an Amended Complaint is simply a strategy to delay this litigation. Moreover, if we granted Tiene leave to amend his Complaint, Defendants would be required to file another Motion for Summary Judgment that would seemingly be based on the exact grounds as their instant Motion for Summary Judgment, resulting in a waste of time and resources for both Defendants and the Court. This is especially true in a situation where Tiene admits that his proposed First Amended Complaint contains little differences from his original Complaint. Accordingly, Tiene's Motion for Leave to File an Amended Complaint is denied.

**B.      Defendants' Motion for Summary Judgment**

**1.      The Rooker-Feldman Doctrine**

Defendants first argue that the *Rooker-Feldman* doctrine precludes Tiene from proceeding with this lawsuit and deprives the Court of subject matter jurisdiction. (Defs.' Mem. Support Mot. Summ. J. at 16-17, 19-23.) The doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the only two cases in which the Supreme Court of the United States ("Supreme Court") has applied it to defeat subject matter jurisdiction. *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010). It applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In other words, "a federal district court lacks subject matter jurisdiction over an action in the nature of an appeal seeking to reverse a state court decision." *Hua v. U.S. Bank Nat'l Ass'n*, No. 14-6767, 2015 WL 1071606, at *2 (E.D. Pa. Mar. 11, 2015).

The Supreme Court has cautioned that the reach of the *Rooker-Feldman* doctrine is narrow. *See Exxon Mobil*, 544 U.S. at 284. The doctrine is not applicable "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. It is not implicated "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Id.* (quoting *GASH Assocs. v. Vill. of Rosemont, Ill*, 995 F.2d 726, 728 (7th Cir. 1993)) (second alteration original). If the federal plaintiff does present an independent claim, "'then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH*, 995 F.2d at 728).

After the Supreme Court decided *Exxon Mobil*, the United States Court of Appeals for the Third Circuit ("Third Circuit") articulated four elements for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries that the state court judgment caused; (3) the state court judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgment. *Great W.*, 615 F.3d at 166 (citing *Exxon Mobil*, 544 U.S. at 284). The second and

fourth elements are substantive and key "to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Defendants maintain that Tiene is complaining of the judgment against him in the Municipal Court Lawsuit and has transformed that matter into an FDCPA and UTPCPL action in this Court. (*See* Defs.' Mem. Support Mot. Summ. J. at 19, 22.) In particular, Defendants claim that service of the Municipal Court Complaint was fully dealt with in the state court judgment, as were issues related to whether attorney's fees were unreasonable and excessive and whether Drexel improperly charged certain fees to Tiene's account. (*Id.* at 19.)

We agree with Defendants that allegations pertaining to whether attorney's fees were unreasonable and excessive and whether Drexel improperly charged Tiene with certain fees would necessarily involve this Court acting as an appellate court, which the *Rooker-Feldman* doctrine clearly prohibits. *See Great W.*, 615 F.3d at 165 (stating that the *Rooker-Feldman* doctrine establishes that federal district courts lack subject matter jurisdiction over what are essentially appeals of state court judgments). Here, elements one and three of the *Rooker-Feldman* doctrine are met because Tiene lost in state court prior to filing the Complaint in this action. As to elements two and four, a review of the transcript from the trial on the merits, which took place on June 14, 2017 in Philadelphia Municipal Court, shows that Tiene is merely complaining of an injury caused by the state court judgment and is inviting this Court to review it. Indeed, the transcript shows that the Municipal Court Judge clearly reviewed JSW attorney's fees and determined them to be reasonable. (Defs.' Mem. Support Mot. Summ. J., Ex. 13 at 62-74.) The Municipal Court Judge also determined that Drexel did not improperly charge certain fees to Tiene's student account. (*Id.*) The following testimony took place at the hearing that illustrates those points:

| | |
|---|---|
| Mr. Allard: | I did not have an opportunity to rest yet, but before I was going to rest, I was going to hand up and [sic] attorney's fee bill, and I do have one. |
| The Court: | I was going to ask you if you have an affidavit. |
| Mr. Allard: | Absolutely. |
| The Court: | All right. I will take a look at it. |
| Mr. Allard: | We have demonstrated how the online agreement works, and it was in fact accepted several times from 2008 onward. I prepared an attorney's fee bill that's got Watson – |

*   *   *

| | |
|---|---|
| The Court: | All right. Give me your affidavit please. |
| Mr. Allard: | I have two bills. One that was prepared for the time up to the default court date, and then I prepared another one from – |
| The Court: | From that time until now? |
| Mr. Allard: | Forward, yes. |
| The Court: | Okay, good, let me see. |
| Mr. Allard: | There are two different rates, and I have used the rates set forth by community legal services based on time and – |

*   *   *

| | |
|---|---|
| The Court: | You asked for the $2,624.62? |
| Mr. Allard: | Yeah, but we are saying that's what our actual fees are. |

*   *   *

| | |
|---|---|
| The Court: | All right. Judgment for [Drexel], in the amount of $7,881.73, plus $2,624.62 for a total of $10,506.35, and a filing fee of $90.00. |

(*Id.* at 63-65, 73-74.) The aforementioned testimony shows that not only does the judgment

reflect that JSW's fees were reasonable, but also that Drexel did not improperly charge Tiene for

fees associated with his student account. Drexel was awarded exactly what they prayed for in

11

relief in Philadelphia Municipal Court. Any allegation that the state court awarded unreasonable attorney's fees or that Drexel improperly charged Tiene's account would be asking this Court to act as an appellate court. This is precisely the type of review that we lack subject matter jurisdiction over, and the *Rooker-Feldman* doctrine bars Tiene's claims about attorney's fees and student account fees.

The argument that the *Rooker-Feldman* doctrine bars Tiene's allegation that Defendants improperly served him with process in the Municipal Court Lawsuit requires a more nuanced discussion. With regard to the second and fourth elements of *Rooker-Feldman*, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great W.*, 615 F.3d at 167. "If the matter was previously litigated, there is jurisdiction as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court." *Id.* at 169 (quoting *Exxon Mobil*, 544 U.S. at 293) (alteration in original). The *Rooker-Feldman* doctrine is not applicable when a plaintiff asserts independent claims, such as when the "'state court judgments were procured by certain Defendants through fraud, misrepresentation, or *other improper means*.'" *Id.* at 168 (quoting *McCormick v. Braverman*, 451 F.3d 382, 384 (6th Cir. 2006)) (emphasis added).

While the issue is close, we believe that Tiene's allegation of false and deceptive service of process of the Municipal Court Lawsuit is the kind of independent claim that the *Rooker-Feldman* doctrine does not bar. Although the issue of service of process was addressed at the May 11, 2017 hearing, Tiene asserts a federal claim under the FDCPA in this Court. The Municipal Court Judge did not make any findings or conclusions of law based on the FDCPA. Indeed, Tiene's claim is based upon improper service of process in an effort for Drexel and JSW

to obtain an easy default judgment against him.  (*See* Pl.'s Resp. in Opp'n Defs.' Mot. Summ. J.[6] at 18-19.)  In other words, he claims a violation of the FDCPA based on the Defendants' actions and the default judgment being procured through "other improper means."  *See Great W.*, 615 F.3d at 168 (quoting *McCormick*, 451 F.3d at 384).  We do not see that allegation as being one that the state court judgment caused.  Accordingly, we conclude that the *Rooker-Feldman* doctrine has no application to his allegation of improper service of process.

## 2.    Pennsylvania Preclusion Law

Even though we concluded above that Tiene's FDCPA allegation of improper service of process survives *Rooker-Feldman* because it was not caused by the state court judgment, "the federal suit is . . . instead[] subject to state law principles of preclusion."  *Hua*, 2015 WL 1071606, at *3 (citing *Exxon Mobil*, 544 U.S. at 293).  Defendants argue that res judicata prevents Tiene from relitigating the service issue in this matter because the state court judgment clearly reflects that the issue was litigated already in Philadelphia Municipal Court.  (*See* Defs.' Mem. Support Mot. Summ. J. at 18-19, 23-24.)

The doctrine of res judicata under Pennsylvania law encompasses both "technical res judicata" and collateral estoppel.  *See Weney v. W.C.A.B. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Commw. Ct. 2008).  Technical res judicata, also referred to as claim preclusion, provides that "'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.'"  *Id.* (quoting *Henion v. W.C.A.B. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Commw. Ct. 2001)).  Collateral estoppel, referred to as issue preclusion, "'is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated.'"  *Id.* (quoting

---

[6] Tiene did not include page numbers in his Response in Opposition to Defendants' Motion for Summary Judgment. Accordingly, we use the ECF-generated pagination when citing to that document.

*Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Commw. Ct. 1998)).

Although Defendants brief the application of claim preclusion in this matter, we believe that issue preclusion is the more appropriate doctrine that bars relitigation of the service issue. There are four requirements for issue preclusion to apply under Pennsylvania law: (1) "the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine"; (2) "the issue was actually litigated in the first action"; and (3) "a final judgment on the specific issue in question was issued in the first action." *Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002) (plurality) (citations and footnote omitted). "An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect." *Id.* at 502-03 (internal citation omitted).

Applying the requirements of issue preclusion to this case, we believe that all three elements are satisfied. First, the allegation of improper service of process is identical in both the Municipal Court Lawsuit and the Federal Lawsuit. Second, the service issue was clearly litigated in the first action, as the Municipal Court Judge made a specific finding that JSW and Drexel did not engage in any kind of misrepresentation with regard to serving Tiene at the Boonton Address. Indeed, the Municipal Court Judge stated as follows at the May 11, 2017 hearing:

> The Court:  Okay, well I think that it's all based on reasonableness, but okay. I am going to – listen, not for the reason you stated in terms of whether or not I believe – *I do not believe that [Tiene] was intentionally not notified. I believe that [Drexel and JSW] used information available to them, and it might have even been supplied by [Tiene].* So, I am putting that on the record,

> but I am going to vacate the [default] judgment and we are going
> to have the hearing.

(Defs.' Mem. Support Mot. Summ. J., Ex. 11 at 18-19) (emphasis added).  The Municipal Court Judge made a specific finding on the service issue, concluding that service was based on reasonableness and that JSW and Drexel did not engage in intentional wrongdoing.  Tiene merely seeks to relitigate an issue that was already decided in state court.  Therefore, issue preclusion bars his claim in this Court that service of process of the Municipal Court Lawsuit was somehow improper.  Accordingly, Tiene can maintain no successful claim against JSW under the FDCPA, and we will dismiss the FDCPA Count with prejudice.[7]

## IV. CONCLUSION

The *Rooker-Feldman* doctrine bars most of Tiene's allegations against JSW and Drexel, such as unreasonable attorney's fees and improper charges to his student account.  Although his allegation of improper service of process is not implicated by *Rooker-Feldman*, it was an issue that was clearly addressed and litigated in state court.  Therefore, Tiene can maintain no successful claims against JSW under the FDCPA (Count I).

To the extent that Tiene has any claims remaining under the UTPCPL (Count II) against Drexel, we decline to exercise supplemental jurisdiction over them.  *See* 28 U.S.C. § 1367(c)(3).

---

[7] Tiene also complains that the March 31, 2017 letter from JSW to Tiene regarding the default judgment was somehow misleading.  (*See* Compl. ¶ 30.)  He complains principally that JSW misrepresented the amount of the default judgment in violation of the FDCPA.  He contends that JSW misrepresented to Tiene in the March 31, 2017 letter that the amount of the debt at issue was "$10,905.35 plus court costs and interest at 6% per annum," when in reality the default judgment entered on March 29, 2017 reflected a judgment of $10,596.35.  (*Id.* ¶ 30(e).)

Tiene is plainly incorrect that the March 31, 2017 letter contained a misrepresentation of the amount of debt owed.  The letter clearly states that "on March 29, 2017, we received a judgment against you in Philadelphia County. . . . in the amount of $10,506.35 plus court costs [$90.00] and interest of 6% per annum."  (*See* Compl., Ex. C.)  The amount of the default judgment is exactly what JSW obtained on behalf of Drexel (and also the amount subsequently awarded at the merits hearing on June 14, 2017), and there was no misrepresentation of the amount of debt on behalf of JSW.

For the reasons set forth above, Tiene's Motion for Leave to File an Amended Complaint is denied, and Defendants' Motion for Summary Judgment is granted.[8]

An appropriate Order follows.

---

[8] As noted above, we will also deny Tiene's Discovery Motions as moot.