IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PHILIP TIENE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 17-2683 |
| DREXEL UNIVERSITY and J. SCOTT WATSON, P.C., | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                         **JULY 10 , 2019**

      Plaintiff Philip Tiene ("Tiene") filed suit in this Court against Defendants Drexel University ("Drexel") and J. Scott Watson P.C. ("JSW") (collectively, "Defendants") on June 14, 2017. Tiene alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* against JSW and a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.* against Drexel. Tiene's claims arise out of allegedly deceptive practices that Defendants took in seeking to collect a debt from Tiene's failure to pay tuition accrued during his time as a student at Drexel.

      Presently before the Court is Defendants' Motion for Summary Judgment, Tiene's Memorandum of Law in Opposition, and Defendants' Reply in Support. For the reasons noted below, Defendants' Motion is granted.

**I.**       **BACKGROUND**

      Tiene was enrolled as a student at Drexel from September 22, 2008, to June 14, 2014. (Defs.' Mem. Law in Supp. Mot. Summ. J. Statement of Undisputed Material Facts ("SUF")

¶ 1.) Drexel's students utilize the Banner System to self-service their student account and profile. (*Id.* ¶ 2.) The Banner System enables a student to access their account through a web portal. (*Id.* ¶ 3.) Students access their profile by using a unique username and password. (*Id.* ¶ 4.) Tiene could access his tuition bill through the Banner System. (*Id.* ¶ 6.)

Students are responsible for maintaining and updating their contact information in the Banner System. (*Id.* ¶ 7.) Drexel's records show that the only individual who had authorization to modify or update Tiene's residential address in the Banner System was Tiene. (*Id.* ¶ 8.) It is Drexel's policy that a student's residential address for the purposes of collection of a delinquent tuition account is the residential address that he or she has entered in the Banner System. (*Id.* ¶ 9.)

Tiene first entered his residential address as 7 Woodcrest Road, Boonton, NJ 07005 (the "Boonton Address") in the Banner System on July 9, 2012. (*Id.* ¶ 11.) Subsequently, Tiene confirmed his residential address as the Boonton Address on August 21, 2012, September 24, 2012, March 26, 2013, September 23, 2013, and March 24, 2014. (*Id.* ¶ 12.) Periodically, Tiene would change the city to Parsippany, NJ, but never modified the street address and zip code. (*Id.* ¶ 13.) Tiene never personally changed the Boonton Address in the Banner System after March 24, 2014. (*Id.* ¶ 14.)

Students must read and complete the Student Financial Obligation and Tuition Repayment Agreement ("Tuition Repayment Agreement") before they are able to register for classes. (*Id.* ¶ 15.) When a student, including Tiene, logs into their Banner System account at the start of each term, they are presented with the Tuition Repayment Agreement so that they are aware of Drexel's policies regarding tuition repayment. (*Id.* ¶ 16.) The student is required to acknowledge and accept the terms of the Tuition Repayment Agreement. (*Id.*) Tiene accepted

the terms of the Tuition repayment Agreement by logging into the Banner System using his Drexel student ID and clicking a box indicating that he acknowledged and agreed to the stated conditions. (*Id.* ¶ 18.)

Allegedly, Tiene attended two classes at Drexel from September 2013 through March 2014, but failed to pay tuition and other fees associated with these classes. (*Id.* ¶ 19.) Drexel sent Tiene letters regarding his overdue balance on July 22, 2014, August 14, 2014, and March 10, 2015, to the following address: "7 Woodcrest Rd., Parsippany NJ, 07005." (*Id.* ¶ 20.) These letters were never returned to Drexel as undeliverable. (*Id.* ¶ 21.) Previously, Drexel had sent Tiene billing statements from 2013 to 2015 to an address in Nutley, NJ 07110, as this was the address Tiene maintained in the Banner System to receive bills, but was not indicated as his current residential address. (*Id.* ¶ 22.)

On May 21, 2015, Tiene spoke via the telephone to Jerome Wilson ("Wilson"), a Senior Collection Specialist in Drexel's Bursar's Office, regarding his tuition bill. (*Id.* ¶ 25.) Wilson explained the outstanding tuition bill to Tiene and Tiene provided a Philadelphia address to Wilson. (*Id.* ¶¶ 28-29.) Wilson entered the Philadelphia address into the Banner System, but marked it as a billing address and did not replace the Boonton Address. (*Id.* ¶ 29.) Notes from this telephone call were entered in Drexel's RightNow System by Wilson, but the telephone conversation was not recorded per a Drexel policy concerning communications with students. (*Id.* ¶¶ 25–27.)

On May 6, 2016, Drexel retained JSW to collect the unpaid tuition owed by Tiene. (*Id.* ¶ 35.) Dexel provided JSW with a "placement sheet" that contained information for several delinquent accounts, including Tiene. (*Id.* ¶ 36.) The placement sheet provided by Drexel

3

showed Tiene's address as the Boonton Address. (*Id.* ¶ 37.) Drexel did not provide any other addresses for Tiene. (*Id.*)

JSW typically sends a collection letter to the address of the individual provided by the creditor, which, in this case, was Drexel. (*Id.* ¶ 40.) JSW sent Tiene an initial letter dated May 12, 2016, via regular mail regarding his outstanding balance owed to Drexel to the Boonton Address. (*Id.* ¶ 41.) The letter was never returned to JSW as undeliverable. (*Id.* ¶ 44.) Approximately a month later, on June 24, 2016, JSW sent Tiene a letter via regular mail regarding his outstanding bill. (*Id.* ¶ 45.) The June 24, 2016 letter states "Re Drexel University Tuition Philip Tiene." (*Id.* ¶ 48.) The June 24, 2016 letter was not returned to JSW as undeliverable either. (*Id.* ¶ 49.)

On January 25, 2017, JSW filed a complaint in Philadelphia Municipal Court against Tiene seeking his outstanding tuition balance owed to Drexel, plus attorney's fees and court costs ("Municipal Court Lawsuit"). (*Id.* ¶ 53.) The Municipal Court Lawsuit was captioned: *Drexel University v. Philip Tiene*, SC-17-01-25-5579. (*Id.* ¶ 54.) JSW served Tiene with the Municipal Court complaint via regular mail and via certified mail, return receipt requested, at the Boonton Address. (*Id.* ¶ 56.) The copy of the complaint that was sent via certified mail, return receipt requested, was returned to JSW as "unclaimed." (*Id.* ¶ 57.) The copy of the complaint that was sent via regular mail was never returned to JSW. (*Id.* ¶ 58.)

On March 29, 2017, a hearing in the Municipal Court Lawsuit was held. (*Id.* ¶ 59.) An attorney from JSW attended, but neither Tiene nor an attorney on his behalf attended. (*Id.*) As a result, the judge entered a default judgment in Drexel's favor for the amount of $10,596.35, the full amount sought. (*Id.*) The Municipal Court sent Tiene a Notice of the Default Judgment to the Boonton Address. (*Id.* ¶ 60.)

JSW prepared and mailed a dunning letter to Tiene at the Boonton Address on or about March 31, 2017. (*Id.* ¶¶ 61–62.) The March 31, 2017 letter was never returned to JSW. (*Id.* ¶ 64.) Tiene admitted, at his deposition, that he "procured" the letter approximately a week after it was dated.[1] (Defs.' Mot. Summ. J., Ex. D, Declaration of Philip Tiene ("Tiene Dep."), 44:3–21.) Upon receiving the letter, Tiene unsuccessfully attempted to learn more about the lawsuit through a Google search of the case name and docket number. (*Id.* 44:14–21; 56:2–9.)

"Fairly shortly" after receiving the letter, Tiene hired an attorney. (*Id.* at 45:19.) On April 7, 2017, Tiene, through counsel, filed a Petition to Open the Default Judgment with the Municipal Court. (SUF ¶ 70.) In his petition, Tiene alleged that Drexel "knowingly" served Tiene with the Municipal Court complaint at the wrong address and that the amount of attorney's fees was "unreasonably excessive." (*Id.* ¶ 71.)

A hearing was held before the Honorable Christine Hope on May 11, 2017. (Defs.' Mot. Summ. J., Ex. 11 ("May 11, 2017 Hr'g Tr.").) During the hearing, the attorney for JSW, Gregory Allard ("Allard"), argued that it was "a very serious allegation for [Tiene] . . . to accuse me and my client of intentionally using an incorrect address." (*Id.* at 12:4–19.) Allard also presented testimony from William Wathington, a collections specialist at Drexel, in response to Judge Hope's questioning about the Banner System. (*Id.* at 13:14–16:6.) Ultimately, Judge Hope vacated the default judgment, but stated that she "[did] not believe that [Tiene] was intentionally not notified," but rather that JSW "used information available to them, and it might have been supplied by [Tiene]." (*Id.* at 18:20–19:7.) A trial on the merits was held on June 14,

---

[1] Tiene received a copy of the letter from his father. (Tiene Dep., 42:22–23.)

5

2017. (SUF ¶ 78.) A judgment was entered in Drexel's favor in the amount of $10, 596.35.[2] (*Id.* ¶ 81.)

Also, on June 14, 2017, Tiene filed the instant lawsuit in the United States District Court of the Eastern District of Pennsylvania. (*Id.* ¶ 82.) At the close of discovery, Defendants filed a motion for summary judgment. (Doc. No. 9.) After reviewing the accompanying briefing by the parties, we granted the motion on the grounds that Tiene's claims were barred by the *Rooker-Feldman* doctrine or otherwise precluded by Pennsylvania law. (*See* January 3, 2018 Opinion.) On appeal, the United States Court of Appeals for the Third Circuit ("Third Circuit") disagreed with our application of collateral estoppel and remanded the case for further proceedings.[3]

Defendants filed this instant Motion for Summary Judgment on May 6, 2019. Tiene filed his Memorandum of Law in Opposition on May 21, 2019. Defendants filed their Reply in Support on May 28, 2019.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of

---

[2] Tiene filed an appeal of the Municipal Court Lawsuit in the Court of Common Pleas of Philadelphia County on the same day. (SUF ¶ 83.) The appeal was denied on October 3, 2017. (*Id.* ¶ 87.)

[3] Tiene also appealed our denial of leave to amend his complaint. *Tiene v. Law Office of J Scott Watson PC*, 755 F. App'x 203 (3d Cir. 2018). The Third Circuit affirmed our decision. (*Id.* at 207.)

6

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial."  *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362–63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  *Tziatzios v. United States*, 164 F.R.D. 410, 411–12 (E.D. Pa. 1996).  If the court determines there are no genuine disputes of material fact, then summary judgment will be granted.  *Celotex*, 477 U.S. at 322.

### III.    DISCUSSION

Tiene essentially raises four claims against Defendants.  First, he asserts three claims against JSW: (1) a violation of the FDCPA for deceptive debt collection practices regarding the procurement and enforcement of a default judgment by intentionally using an incorrect residential address; (2) a violation of the FDCPA relating to misstatements and omissions on the post-default judgment "dunning" letter; and (3) a violation of the FDCPA for "vigorously" opposing his Petition to Vacate, despite being put on notice that Tiene lived in Philadelphia.

(Pl.'s Mem Law in Opp'n 29–46.)[4] Second, Tiene's claim against Drexel asserts a violation of the UTPCPL relating to deceptive conduct by disregarding and omitting Tiene's attempt to update his residential address. (*Id.* at 48.) We address these claims in that order.

### A. Tiene's Claims against JSW

#### 1. JSW's use of an Incorrect Residential Address was not Material, thus not a Violation of the FDCPA

Tiene argues that JSW used an incorrect address in order to secure and enforce a Default Judgment in violation of the FDCPA. (Compl. ¶ 19.) "Courts routinely employ a 'least sophisticated debtor' standard when deciding if debt collection violates the FDCPA." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). The least sophisticated debtor standard is "lower than the standard of a reasonable debtor," but "it preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Rosenau*, 539 F.3d at 221.

"The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419 (citing *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014)). Importantly, the claimed "false, deceptive, or misleading statemen[t] must be material to be actionable under 15 U.S.C. § 1692e." *See id.* at 418 (citing *Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. 2009)). The FDCPA "was designed to give debtors reliable information so that they can make informed decisions about how to address debts," therefore "by

---

[4] Tiene's Memorandum of Law in Opposition does not include original pagination. Therefore, all citations are referenced to the Case Management/Electronic Case Filing system-generated pagination.

definition immaterial information neither contributes to that object (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 421 (citing *Hahn*, 557 F.3d at 757–58).

Here, Tiene asserts that JSW knew or should have known that his most recent address was in Philadelphia because Tiene provided an updated address to a senior collection specialist at Drexel, Jerome Wilson. (*Id.* ¶¶ 18–19.) However, despite the fact that Wilson updated Tiene's billing address, JSW proceeded to serve the Municipal Court Lawsuit at the Boonton Address. (*Id.*; SUF ¶ 29.) "By falsely certifying to the [Municipal Court that] the [Boonton Address] was [Tiene's] last known address . . . , [JSW] took action which it knew or should have known could not legally be taken, in [violation of 15 U.S.C. § 1692e]."[5] (Compl. ¶ 20.)

Tiene claims that JSW falsely certified to the Municipal Court that the Boonton Address was Tiene's most recent address in order to obtain a default judgment and then used that same address to send a dunning letter in violation of § 1692e. (Pl.'s Mem. Law in Opp'n 29.) However, Tiene fails to identify any legal authority that supports that a mistaken address meets the materiality element of the FDCPA standard. Instead, Tiene provides numerous cases finding that court filings can be subject to the FDCPA and that attorneys can be considered "debt collectors," which are two issues not in dispute in this case. (*Id.* 31–33 (citing *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("The fact that the [alleged violation] appears in a lawsuit or other court filings does not diminish the threatening nature of the communication for purposes of the FDCPA."); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir.

---

[5] Tiene's Complaint specifically cites this claim as a violation of paragraph five of 15 U.S.C. § 1692e. (Compl. ¶ 20 (citing 15 U.S.C. § 1692e(5).) Tiene again directly cites paragraph five in his Memorandum of Law in Opposition for the quote: "[a] debt collector may not use any false, deceptive, or misleading representation [sic] or means in connection with the collection of any debt." (Pl.'s Mem. Law in Opp'n 29.) Section 1692e(5) is just one example of what § 1692e considers "false, deceptive, or misleading" conduct; it states as follows: "The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Clearly, filing a complaint in court is not "threatening" an action, but rather taking an action, thus paragraph five is not applicable. Rather, the language Tiene misattributes to paragraph five in his memorandum of law is actually from the preamble, applicable to the entirety of § 1692e.

2013) ("[T]he FDCPA 'applies to the litigating activities of lawyers,' which as other circuits have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts . . . ."); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) ("To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word 'litigation' that we decline to adopt."); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (finding § 1692e(2) and (10) violations where debt collector's "allegations in its state court complaint . . . gave a false impression as to the legal status it enjoyed")).)

However, these cases are easily distinguishable from Tiene's claims, as each case revolves around evidence of material misrepresentations undertaken by a debt collector during litigation. First, in *Currier*, a debt collector's filing and maintaining an invalid lien against a debtor after the state court judge vacated the underlying default judgment was an "'unfair or unconscionable means to collect or attempt to collect' the debt" in violation of §§ 1692e and 1692f. 762 F.3d at 534–36. The United States Court of Appeals for the Sixth Circuit found that "though invalid, the judgment lien appears valid on its face, thus representing to the least sophisticated consumer and the public that the creditor had a final judgment . . . and had a valid interest in the debtor's home." *Id.* at 535. Likewise, in *Gearing*, the United States Court of Appeals for the Seventh Circuit found that a debt collector's "false impression as to the legal status it enjoyed" over a subrogation in a state court complaint was a violation of § 1692e(2) and (10). 233 F.3d at 472. Conversely, in *James*, the Court of Appeals for the Tenth Circuit found that a plaintiff could not prove a defendant was a debt collector based on "[m]ere allegations

unsupported by further evidence [and] are insufficient to survive a motion for summary judgment." 724 F.3d at 1319–20 (quoting *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)).

Here, Tiene argues that JSW intentionally used an incorrect address to win and enforce a default judgment against him. (Pl.'s Mem. Law in Opp'n 33.) However, this argument fails for two reasons. First, JSW's use of an incorrect address on the municipal complaint and dunning letter was not material. *See Jensen*, 791 F.3d at 421. "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Id.* (quoting *Elyazidi v. Sun Trust Bank*, 780 F.3d 227, 234 (4th Cir. 2015)) ("To violate the statute, a representation must be material, which is to say, it must be 'important in the sense that [it] could objectively affect the least sophisticated consumer's decisionmaking.'"). By the very nature of Tiene's assertion, Tiene never received service of the municipal complaint; therefore, he was unaware of the action against him and his decisionmaking process could not be influenced. Likewise, to the extent using the incorrect address was a nefarious scheme orchestrated by JSW to secure a default judgment without Tiene's knowledge, it theoretically would have failed when the Municipal Court and JSW sent a Notice of the Default Judgment and dunning letter, respectively, to the same, incorrect Boonton Address. (SUF ¶¶ 60–61.) As Tiene no longer lived at that address and would not have received the notices, it was impossible for either to influence his decisionmaking process. Crucially, Tiene has produced no evidence that JSW sent any notice or dunning letter to his valid Philadelphia residential address attempting to collect or enforce the default judgment.

Second, Tiene is unable to provide any evidence that JSW knew the Boonton Address was incorrect.[6] (Defs.' Mem. Law in Supp. Mot. Summ. J. 21.) Drexel has made clear that its

---

[6] We ignore Tiene's arguments that "JSW knew that Tiene actually lived in Philadelphia," "based on the slew of evidence [Tiene] provided, [including] the lease, the affidavit, Tiene's Testimony, his tax returns, his rent ledger, his

11

policy prevents anyone, but the student, in this case, Tiene, from updating a residential address on the Banner System. (Defs.' Mot. Summ. J., Ex. A, Declaration of James Seward, Jr. ("Seward Decl."), ¶¶ 16–18.) Drexel's policy also states that it uses the residential address "for purposes of collection of a delinquent tuition account . . . [because] [m]ost students who live at Drexel have only a temporary address while enrolled at school." (SUF ¶¶ 9–10.) Nowhere is Tiene able to show that updated billing address he gave to Wilson was ever provided to JSW. (*Id.* ¶ 37 ("The placement sheet provided by Drexel showed Tiene's address as [the Boonton Address].").)

Moreover, Tiene has identified no duty, and we have not found one, under the FDCPA that a debt collector must investigate debts that it seeks to collect. *See Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 (D. Del. 2012) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006)) ("[T]he FDCPA did not impose upon [the debt collector] any duty to investigate independently the claims presented by [the creditor]."); *Yentin v. Michaels, Louis & Assocs., Inc.*, No. 11-0088, 2011 WL 4104675, at *9 (E.D. Pa. Sept. 14, 2011). "Furthermore, '[c]ourts do not impute to debt collectors other information that may be in creditors' files . . . ." *Jacques*, 886 F. Supp. 2d at 433 (quoting *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004)). As Judge Hope found when deciding to vacate the default judgment, "[JSW] used information available to them, and it might have even been supplied by [Tiene]." (May 11, 2017 Hr'g Tr. 18:20–19:3.)

---

voter registration, his utility bills, [and] Drexel's own record Banner System updated by [Wilson] . . . ." (Pl.'s Mem. Law in Opp'n 33–34.) We have already addressed Wilson's update of Tiene' billing address following Tiene's phone call and the lack of evidence that such address was provided to JSW. As for the remaining pieces of evidence, Tiene provides no date for when they were provided to JSW, but presumably it was after JSW filed the municipal complaint and sent the dunning letter. Thus they are unhelpful for this issue.

12

Towards the end of his argument, Tiene asserts that "the FDCPA 'is a strict liability statute to the extent it imposes liability without proof of an intentional violation' by a debt collector." (Pl.'s Mem. Law in Opp'n 34 (quoting *Allen v. LaSalle Bank*, 629 F.3d 364, 368 (3d Cir. 2011)).) While true, it does not mean that simply because JSW used the incorrect address, it is an automatic violation of the FDCPA. Strict liability in this context "makes debt collectors liable for *violations* that are not knowing or intentional." *See Donohue*, 592 F.3d at 1030 (emphasis added) (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)); *see also LaSalle Bank*, 629 F.3d at 368 ("If an *otherwise improper communication* would escape FDCPA liability simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability."). As we have already found that there is no violation, because JSW's mistake was not material, strict liability does not apply.

For these reasons, the use of the Boonton Address was not material and not a violation of the FDCPA. *See Jensen*, 791 F.3d at 421. Therefore, Tiene's claims concerning the address used to serve the Municipal Court complaint and dunning letter is dismissed with prejudice.[7]

### 2. JSW's Dunning Letter Contained No Material Mistakes or Misrepresentations in Violation of the FDCPA

Tiene's next argument concerns alleged mistakes that appeared in the March 31, 2017 dunning letter. (Pl.'s Mem. Law in Opp'n 39–46.) Specifically, Tiene identifies three mistakes in the dunning letter that made the case difficult or impossible for him to find: (1) an extra word appeared in the name of the original creditor of the judgment, identifying the case name as

---

[7] To the extent Tiene asserts a claim of improper service of the municipal complaint, it is dismissed. (Pl.'s Mem. Law in Opp'n 32–33 (citing Pa. R. Civ. P. 1023(c)(2)).) Tiene improperly raises this issue for the first time in his Memorandum of Law in Opposition. (*See* Defs.' Mem. Law in Supp. Mot. Summ. J. 34–35 (quoting *United States v. Margolis*, No. 07-4313, 2008 WL 4823599 (D.N.J. Nov. 5, 2008)) ("[T]he Court cannot entertain an application or motion for an order on claims that have not been asserted by a party in the Complaint.").) As a claim for improper service was not included in the Complaint, and we have denied a request to amend, the claim is dismissed.

13

"Drexel University *Tuition* v. Philip Tiene," rather than the correct name, "Drexel University v. Philip Tiene"; (2) the omission of the Municipal Court prefix, "SC," from the docket number; and (3) failing to specify the court in which the default was obtained and only stating "Philadelphia County." (*Id.* at 41–42 (emphasis added).) Tiene argues these mistakes violate the above-described least sophisticated debtor standard of the FDCPA. (*Id.* at 43 ("Such inaccuracy therefore hinders [the] least sophisticated consumer's ability to timely contest the [default judgment], when time is very much of essence, and leaving no doubt about [the] falsity of the information provided.").)

"We use the 'least sophisticated debtor' standard in order to effectuate 'the basic purpose of the FDCPA: . . . to protect "all consumers, the gullible as well as the shrewd" . . . .'" *Rosenau*, 539 F.3d at 221 (alterations in original) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). The least sophisticated debtor must use "a quotient of reasonableness" and is presumed to have a "basic level of understanding and willingness to read with care." *See id.* (quoting *Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000)). "The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419.

Here, Tiene fails emphatically to meet this burden. We have no doubt that an "objective least sophisticated debtor," exercising even the smallest amount of reason, would not have been confused by JSW's dunning letter.[8] Tiene's inability to locate the Municipal Court Lawsuit in the Municipal Court database is unpersuasive, at best, if not outright deliberate. (Pl.'s Mem.

---

[8] While not explicitly stated, Tiene's Memorandum of Law in Opposition, coupled with his deposition testimony, appears to assert that he was unable to find information concerning the default judgment by putting the docket number and case name "into Google." (*See* Tiene Dep. at 44:14–21; 56:2–9; SUF ¶ 69; Defs.' Mem. Law in Supp. Mot. Summ. J. 39.) To the extent that Tiene is attempting to assert this fact to bolster his argument, it is little surprise that he was unable to learn anything concerning his case from a Google search and it is so patently absurd to make such a claim as part of an FDCPA violation that we need not address it further.

14

Law in Opp'n 41.) First, a reasonable person searching a database for a case in which they are a *named defendant* would search for their own name. Tiene does not claim to have done so, instead searching only for the plaintiff. (*Id.* at 43–44.) Obviously, if Tiene had searched for his name he would have found six results, including the Municipal Court Lawsuit. (Defs.' Mot. Summ. J., Ex. F, Declaration of Monica M. Littman ("Littman Decl.") (providing screenshots of search results from Municipal Court docket search).)

Second, Tiene claims that he was unable to locate the case on the Municipal Court database after conducting a search in the plaintiff field for "Drexel University Tuition." (Pl.'s Mem. Law in Opp'n 43 (finding search result for "Drexel University Tuition" returned: "No Records Found").) While that was the way that Drexel's name appeared on JSW's dunning letter, if Tiene had attempted a search for "Drexel," he would have found 1,377 records, including the underlying action. (Littman Decl. ¶ 7.) Although clearly less helpful and narrow than the results for "Tiene," a reasonable person would not have stopped their record search after finding zero results and could reasonably be expected to search for the more common and recognizable variant.[9] Therefore, we do not believe that the inclusion of an additional word would confuse the least sophisticated debtor.

JSW's second and third alleged misstatements on the dunning letter concern in which court the case was filed. (Pl.'s Mem. Law in Opp'n 44.) The docket number on the dunning letter did not include the appropriate prefix for the Municipal Court, "SC," and the letter did not

---

[9] Interestingly, Tiene has proven his ability to use similar, but not exact, search terms when it concerns the docket number. The dunning letter displays the docket number as "Docket Number: 17-07-25-5579." (Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 18 ("Dunning Letter").) However, Tiene argues that a docket search for the number "1701255579" returned: "No Records Found." (Pl.'s Mem. Law in Opp'n 44.) Of course, had Tiene searched for the docket number as written in the dunning letter, including the hyphens, he would have found precisely one case—*Drexel University v. Philip Tiene*. Tiene does not address why he believed that he could drop the hyphens from the docket search while not searching for Drexel without dropping the word "tuition."

15

otherwise identify the specific court, merely noting that a default judgment had been entered against Tiene in "Philadelphia County." (Defs.' Mem. Law in Supp. Mot. Summ. J., Ex. 18 ("Dunning Letter").) Tiene argues that "in order to obtain any relief from the default judgment the debtor would have to file a petition in the proper court that issued the default judgment." (Pl.'s Mem. Law in Opp'n 45.) With five potential courts in Philadelphia county, Tiene argues that the least sophisticated debtor would be unable to know where to file the petition. (*Id.*)

However, JSW's failure to identify the specific court is immaterial for the purposes of the FDCPA. *See Jensen*, 791 F.3d at 421. Tiene has provided no caselaw or valid argument that a debt collector has a duty to assist in overturning a default judgment. Rather, JSW sent the dunning letter to inform Tiene that JSW was enforcing a valid judgment against him. Nothing about the lack of court indicator prevents the least sophisticated debtor from understanding that a default judgment had been entered against them. Moreover, at the time JSW mailed the dunning letter, it had already mailed copies of the municipal court complaint via regular and certified mail to the Boonton Address and the Municipal Court had also sent or was sending a Notice of Judgment to the Boonton Address. Therefore, we do not find that failing to include the specific court in the March 31, 2017 dunning letter violated the FDCPA

For these reasons, the March 31, 2017 dunning letter did not violate the FDCPA. Accordingly, Tiene's claim is dismissed.

### 3. JSW did not Violate the FDCPA at the May 11, 2017 Hearing

Finally, Tiene asserts that JSW violated the FDCPA by "vigorously oppos[ing] [Tiene's] petition to vacate default, in court, after being put on further notice that Tiene lived in Philadelphia." (Pl.'s Mem. Law in Opp'n 35.) Tiene rests his claim on the fact that JSW brought a witness to the May 11, 2017 hearing to open the default judgment in an attempt to

defend the judgment. (*Id.* at 37–38.) In support of this argument, Tiene cites only one case from the United States District Court of the District of Utah, *Gallegos v. LVNV Funding, LLC*, for the premise that "although [defendants] may not have violated the FDCPA by initially pursuing a debt in reliance on information from the creditor, continuing to pursue the debt without confirming the debtor's information after multiple, clear notices that some of the debtor's information may have been incorrect is a violation of the FDCPA." 169 F. Supp. 3d 1235, 1242 (D. Utah 2016).

In defense, JSW asserts that it did not oppose Tiene's petition. (Pl.'s Mem. Law in Opp'n 37.) Allard, the JSW attorney in attendance at the May 11, 2017 hearing, twice reiterated during his deposition that he brought the witness to the hearing because Municipal Court rules state, "that in the event that a petition to open the judgment is opened and granted, that a trial is to immediately take place." (Defs.' Mot. Summ. J., Ex. C, Gregory Allard Deposition ("Allard Dep."), 85:11–14.) During the May 11, 2017 hearing, Allard made clear to Judge Hope that he was there to defend Tiene's "very serious allegation [that] [JSW] intentionally us[ed] an incorrect address . . . ." (May 11, 2017 Hr'g Tr. 12:10–14.)

After a careful review of the hearing transcript, we find that it is plainly clear that JSW did not try to defend the default judgment. Rather, its defense was specifically limited to the allegations of fraud levied against Defendants by Tiene. While it is true that the witness testified during the petition hearing, it was because Judge Hope asked to hear for more information concerning "when there was attendance and . . . the database that suggests that [Tiene] himself entered [the Boonton Address]." (*Id.* at 13:14–17.) The witness testified only to a business record that Judge Hope ultimately found "spoke for itself." (*Id.* at 13:21–15:24.) Moreover, following the witness's testimony, Judge Hope found that she did not believe Tiene "was

17

intentionally not notified," but "that [JSW] used information available to them, and it might have even been supplied by [Tiene]." (*Id.* at 18:20–19:8.)

Likewise, JSW's assertion that it was prepared for a hearing on the merits following the granting of the petition to open is supported by the transcript. (*Id.* at 19:7–9 ("[THE COURT:] Are you prepared to have the hearing now? MR. ALLARD: Absolutely.").) However, whether Allard would have called the witness is impossible to know, because Tiene was unprepared to proceed and the hearing was continued.

For these reasons, we find there is no dispute of material fact with regards to whether JSW opposed Tiene's petition to open the default judgment in violation of the FDCPA. It is clear that JSW was merely defending itself from allegations of fraud. Accordingly, Tiene's claim is dismissed.

### B. Tiene's Claim against Drexel

Tiene's only claim against Drexel is a state law claim for a violation of the UTPCPL. (Pl.'s Mem. Law in Opp'n 36.) Tiene asserts that because the Third Circuit "reversed [our] dismissal of [Tiene's] FDCPA claims, [we] **may not refuse to exercise** [supplemental jurisdiction] under section (3), of § 1367 . . . ." (*Id.* at 48 (emphasis original).) While we note Tiene's directive, we nonetheless decline to exercise supplemental jurisdiction over Tiene's state law claim against Drexel.

The Third Circuit reversed our decision to dismiss Tiene's claims on the basis of collateral estoppel and directed us to address "Tiene's service of process claim" and "collection letter claims" on remand. As we have now done that, we find that there are no longer any federal claims in this case and decline to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c)(3). Therefore, Count II is dismissed with prejudice.

18

## IV.     CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment is granted. Accordingly, Counts I and II of Tiene's Complaint against JSW for violations of the FDCPA and against Drexel for violations of the UTPCPL are dismissed.

An appropriate Order follows.